## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 06 2019, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Martin H. Kinney, Jr.
Dolt, Thompson, Shepherd
& Conway, PSC
Louisville, Kentucky

ATTORNEYS FOR APPELLEES

Norris Cunningham
Christina L. Essex
Kathryn E. Cordell
Katz Korin Cunningham PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Hazel M. Sendelweck,

*Appellant-Plaintiff,*

v.

Greene County General Hospital d/b/a Good Samaritan Society-Northwood Retirement Community; and The Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society-Northwood Retirement Community,

*Appellees-Defendants*

December 6, 2019

Court of Appeals Case No. 19A-CT-1582

Appeal from the Dubois Circuit Court

The Honorable Nathan A. Verkamp, Judge

Trial Court Cause No. 19C01-1807-CT-452

**Baker, Judge.**

Hazel Sendelweck appeals the trial court's order granting summary judgment in favor of Greene County General Hospital, d/b/a Good Samaritan Society—Northwood Retirement Community (Greene County Hospital), and The Evangelical Lutheran Good Samaritan Society, d/b/a Good Samaritan Society—Northwood Retirement Community (Evangelical Lutheran) (collectively, Defendants). Finding that Sendelweck failed to timely file her claim before the running of the statute of limitations and that there was no due process violation, we affirm.

## Facts

Sendelweck received skilled nursing care from Defendants from March 15, 2016, through May 13, 2016. On May 9, 2016, Sendelweck allegedly received an injury to her shoulder while in the care of Defendants.

On April 10, 2018, Sendelweck filed a Proposed Complaint for damages with the Indiana Department of Insurance (IDOI) for alleged medical malpractice surrounding the injury to her shoulder, naming both Greene County Hospital and Evangelical Lutheran, both operating as "Good Samaritan Society—Northwood Retirement Community," as Defendants. At the time the Proposed Complaint was filed, there were twenty-nine days remaining before the applicable statute of limitations barred Sendelweck's claim; the filing of the complaint temporarily tolled the running of the statute of limitations while the IDOI reviewed the complaint.

[4]     In a letter dated April 19, 2018, and received on or around April 23, 2018, the IDOI notified Sendelweck that neither Greene County Hospital nor Evangelical Lutheran had filed proof of financial responsibility or paid the required surcharge and therefore were not qualified providers under the Indiana Medical Malpractice Act (MMA). In the letter, the IDOI mislabeled Greene County Hospital as Greene County General Hospital, d/b/a Good Samaritan Society—Northwood Retirement *County*, rather than Community. Appellees' App. Vol. II p. 20.

[5]     Due to this mislabeling, Sendelweck believed the IDOI had made an error in its determination, and she followed up with the IDOI in an attempt to clarify whether the correctly named party was, in fact, a qualified provider under the MMA. The IDOI again informed Sendelweck that the letter was a preliminary indication that Defendants were not qualified, but that the case could continue with the IDOI upon a showing by Sendelweck that they were qualified.[1]

[6]     Sendelweck filed a complaint with the trial court on July 11, 2018, alleging medical malpractice against Greene County Hospital and Evangelical Lutheran. On July 26, 2018, Defendants filed a motion to dismiss alleging the claim was barred by the statute of limitations, which they contended expired on

---

[1] Sendelweck claimed that she discovered by her own independent research that the Indiana Patient Compensation Fund Database website lists Greene County General Hospital as a qualified provider. This prompted Sendelweck to contact Defendants' counsel via email on June 11, 2018, to "ask[] if they were going to respond to the Complaint," to which Defendants' counsel replied the same day that Defendants had "not received notice of any state court filing." Appellees' App. Vol. II p. 41, 49. Only after this interaction did Sendelweck finally file the suit in state court a month later.

May 22, 2018, twenty-nine days after Sendelweck received the IDOI's letter. On August 14, 2018, Defendants' pleading was converted to a motion for summary judgment.

[7] Sendelweck filed a Proposed Amended Complaint with the IDOI on October 25, 2018, against the two original Defendants as well as Greene County Hospital in its individual capacity. The malpractice allegations in the amended complaint were identical to those in the original Proposed Complaint and in the complaint filed with the trial court. The IDOI notified Sendelweck on October 31, 2018, that the two original Defendants still were not qualified providers under the MMA, but that Greene County Hospital was a qualified provider in its individual capacity only.

[8] The trial court heard oral argument on the motion for summary judgment on May 30, 2019. On June 12, 2019, the trial court granted summary judgment in favor of Defendants and dismissed Sendelweck's claims. Sendelweck now appeals.

# Discussion and Decision

[9] Sendelweck argues that the trial court erred in granting summary judgment to Defendants for two reasons: first, that the trial court improperly found that the statute of limitations barred Sendelweck's claims; and second, that the MMA's procedure for determining the qualified status of health care providers, as applied to Sendelweck, violates due process of law under the Indiana Constitution.

Our standard of review for summary judgment is well established:

> Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court and applies the same standard in determining whether to affirm or reverse the grant of summary judgment. We must therefore determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law.
>
> Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. If the moving party meets this burden, the burden then shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial.
>
> A genuine issue of material fact exists where facts concerning an issue that would dispose of the issue are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. In our review, we consider all of the designated evidence in the light most favorable to the nonmoving party.

*Robbins v. Trustees of Ind. Univ.*, 45 N.E.3d 1, 5-6 (Ind. Ct. App. 2015) (internal quotations and some internal citations omitted).

# I. Statute of Limitations

Sendelweck first argues that the trial court erred by granting summary judgment to Defendants because the April 18, 2018, letter from the IDOI did not provide

proper notice to Sendelweck to effectively recommence the running of the statute of limitations. More specifically, Sendelweck contends that because the letter misnamed the Greene County Hospital as "Green County General Hospital, d/b/a Good Samaritan Society Northwood Retirement *County*," rather than Northwood Retirement *Community*, this was not a proper notification from the IDOI regarding whether Defendants were qualified providers and it therefore did not cause the statute of limitations to recommence.

[12]     The statute of limitations for medical malpractice claims is two years from the date of the alleged injury. Ind. Code § 34-11-2-4; *id.* § 34-18-7-1(b). The MMA governs medical malpractice claims against "qualified" health care providers, meaning those providers who file proof of financial responsibility with the IDOI and pay a required surcharge. *Id.* § 34-18-3-1, -2. Before an action against a qualified health care provider may be commenced in state court, the claimant must first file a proposed complaint with the IDOI. *Id.* § 34-18-8-4. Once a proposed complaint is filed, the statute of limitations is tolled until the claimant receives from the IDOI either an opinion or until a notification that the named health care provider is not qualified under the MMA, at which point the statute of limitations begins to run again. *Id.* § 34-18-7-3; *Guinn v. Light*, 558 N.E.2d 821, 824 (Ind. 1990). The claimant then has the remainder of the statutory period to file a complaint in court before being time-barred. *Id.*

[13]     Because Sendelweck's alleged injury occurred on May 9, 2016, the two-year statute of limitations would ordinarily run until May 9, 2018. Once Sendelweck

filed the Proposed Complaint with the IDOI on April 10, 2018, the statute of limitations was tolled, with twenty-nine days remaining, until the IDOI either issued an opinion on the matter or notified Sendelweck that the health care providers named in the Proposed Complaint were not qualified under the MMA. Sendelweck argues that, because the Greene County Hospital was misnamed as d/b/a Good Samaritan Society—Northwood Retirement County, she never received proper notice and therefore nothing triggered the re-running of the remaining twenty-nine-day statutory period.

[14] We have addressed the sufficiency of IDOI notice to recommence the running of the applicable statute of limitations in multiple prior cases. *See, e.g.*, *Rumell v. Osolo Emergency Med. Servs., Inc.*, 88 N.E.3d 1111, 1114-20 (Ind. Ct. Appt. 2017), *trans. denied*; *Burns v. Hatchett*, 786 N.E.2d 1178, 1181-83 (Ind. Ct. App. 2003); *Lusk v. Swanson*, 753 N.E.2d 748, 751-52 (Ind. Ct. App. 2001); *Shenefield v. Barrette*, 716 N.E. 2d 1, 3-5 (Ind. Ct. App. 1999). In each of these cases, this Court upheld the grant of summary judgment in favor of the defendants because the plaintiffs failed to file in state court before the statute of limitations expired. In each case, this Court in each found that the IDOI's letter containing a preliminary determination of a provider's qualified status was sufficient, even if containing some ambiguity or lacking total conclusiveness, to re-trigger the running of the statute of limitations. In the event conflicting or unclear information regarding a provider's qualified status is provided to a claimant, the claimant bears an affirmative obligation to inquire further into whether the provider is qualified or not. *Lusk*, 753 N.E.2d at 752.

[15] The facts surrounding this case are most analogous to those in *Rumell*. The plaintiff in that case received a notice letter from the IDOI stating the provider was not qualified under the MMA. Like Sendelweck, Rumell then followed up with the IDOI and was told, just as Sendelweck was here, that the information in the letter was a preliminary determination of the provider's status. Rumell argued that the post-letter action of following up with the IDOI showed that the letter was not conclusive enough to trigger the running of the statute of limitations. *Rumell*, 88 N.E.3d at 1118. This Court disagreed: "As the trial court properly determined, [n]owhere in [prior case law] is there any indication that the IDOI's determination needs to be conclusive, definitive, or otherwise beyond all possibility of subsequent modification for its receipt to recommence the statute of limitations." *Id.* (internal quotations omitted). Further, the information received when Rumell followed up with the IDOI, "although indicating that the status of the [providers] could be changed, did not in any way contradict the information concerning the [providers'] status provided in the [initial] letter." *Id.* at 1119.

[16] We see no meaningful distinction between the facts in *Rumell* and those in the instant case. Sendelweck appropriately filed a proposed complaint with the IDOI, correctly naming as defendants Greene County Hospital and Evangelical Lutheran, both d/b/a Good Samaritan Society—Northwood Retirement Community. The filing of the proposed complaint tolled the statute of limitations until the IDOI reviewed the complaint and informed Sendelweck, via the April 19, 2018, letter, that neither of the Defendants had filed proof of

financial responsibility or paid the required surcharge and thus were not qualified providers under the MMA. Once received, the letter provided sufficient notice to Sendelweck to trigger the running of the remaining statutory period, which meant Sendelweck had until May 22, 2019, to file her complaint with the trial court.

[17] Although the IDOI mislabeled the d/b/a designation for one of the parties, the burden was nonetheless on Sendelweck to follow up and clarify the issue with the IDOI and to show that the misnamed provider was actually qualified, if that were the case. And interestingly, although Sendelweck claims to have seen Greene County Hospital listed as a qualified provider on the Indiana Patient Compensation Fund Database website, she never presented that information to the IDOI to prove its qualified provider status. Instead, she only contacted Defendants to ask if they were going to respond to the Proposed Complaint, to which they replied they were waiting for her to file in the trial court. Appellees' App. Vol. II. p. 41, 49.

[18] Furthermore, Sendelweck knew the correct identities of the named Defendants and was equipped with the proper business names to conduct her own independent research. Therefore, this was not a case of the IDOI or the providers misleading a claimant with incomplete information; it was merely a typographical error, and not a significant or misleading one at that. *Compare Schriber v. Anonymous*, 848 N.E.2d 1061, 1064-65 (Ind. 2006) (noting that continued tolling of the statute of limitations was appropriate remedy where defendants attempted to obfuscate plaintiff's ability to determine provider's

proper business name, and thus there was reason to doubt the accuracy of the IDOI's determination), *with Rumell*, 88 N.E.3d at 1119-20 (distinguishing *Schriber* where "[h]ere, on the other hand, [plaintiff] *knew the identities of the Defendants*, so there was little reason to view the IDOI's indication that the Defendants were not qualified as suspect" (emphasis added)).

[19] Sendelweck waited until a full fifty days after the statute of limitations expired to file the complaint in court, and made no attempt to show to the IDOI that the Defendants' qualification status may have been incorrect. Nor did she make any effort to protect herself from being time-barred by filing in court to preserve her claim while she continued to clarify the providers' status with the IDOI. *See* I.C. § 34-18-8-7 (authorizing claimants to "commence an action in court for malpractice at the same time the claimant's proposed complaint is being considered by [the IDOI]," so long as anonymity is preserved for the defendants until the IDOI issues an opinion or makes a qualification determination); *Shenefield*, 716 N.E.2d at 6 ("The [plaintiffs] could have avoided a limitations problem by filing their complaint with both the [IDOI] and the court."). And Sendelweck even outright conceded to the trial court that the claim was filed after the statute of limitations had expired: "I think that when we filed with this Court it was outside the window. . . . I mean, I don't know what else to say to the Court. I mean, I apologize to the Court that I wasn't—didn't have the foresight to file the anonymous complaint with the Court . . . ." Tr. Vol. II p. 13.

[20] In light of the evidence designated for the summary judgment motion, we find no genuine issue of material fact as to whether Sendelweck's medical malpractice claim was barred by the statute of limitations. The IDOI letter provided sufficient notice to recommence the running of the statute of limitations, which still gave Sendelweck nearly another month to take appropriate action. And to the extent that there was conflicting information found during her independent research of the Defendants' qualified status, Sendelweck nonetheless failed to act timely by neither making the proper showing for the IDOI nor preserving her claim in court.

## II. Due Process

[21] Sendelweck next argues that, regardless of whether the IDOI provided sufficient notice or her claim was barred by the statute of limitations, the MMA as applied to her case violates the due process guarantee under Article 1, Section 12 of the Indiana Constitution because the MMA "fails to provide a reasonable means for [Sendelweck] to prospectively determine the qualified status of health care providers. Thus, improperly denying her access to justice." Appellant's Br. p. 10.

[22] Article 1, Section 12 provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." The "due course of law" language has been interpreted by this Court to require "a

fair proceeding in which the fundamental requirements of due process are notice and an opportunity for hearing appropriate to the nature of the case." *Lake Cent. Sch. Corp. v. Scartozzi*, 759 N.E.2d 1185, 1190 (Ind. Ct. App. 2001).

[23] Sendelweck argues that the MMA and caselaw essentially require her to file a complaint with the IDOI to determine whether a provider is qualified as well as file a complaint in court, but that since the filing with the IDOI is mandated before she is allowed to exercise her right to seek redress in court, this dual-filing requirement amounts to an "unreasonable impediment" on pursuing a valid claim under *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 980 (Ind. 2000).

[24] Sendelweck's reliance on *McIntosh* is misplaced. In *McIntosh*, our Supreme Court was reviewing the constitutionality under Article 1, Section 12 of a statute of repose for products liability that barred all claims outright for injuries occurring after ten years following an event (the delivery of a product to a consumer) unrelated to any injury suffered, thereby eliminating any remedy for any injuries sustained after the passage of a set amount of time. The Court held that with such limitations on available remedies, "the limitation must not be an unreasonable impediment to the exercise of an otherwise valid claim," *id.* at 980, and it is this language that Sendelweck relies on to contend that the dual-filing system under the MMA violates due process.

[25] Here, in contrast to *McIntosh*, the statute at issue is a statute of limitations, not a statute of repose—rather than having no remedy whatsoever for an otherwise valid claim for her alleged injury, Sendelweck had a remedy available, but

simply failed to timely seek that remedy, a fact which she conceded at oral argument. As such, we simply cannot find that, as applied to Sendelweck, the MMA procedure for bringing her claim violated due process under *McIntosh*.

[26] In regards to the nature of the dual-filing system itself, we reiterate the sentiment expressed by this Court in previous cases and "decline to require, or even endorse, the 'double filing' . . . due to the potential strategic disadvantages it entails and the duplication of effort and additional expense inherent in the double filing procedure." *Shenefield*, 716 N.E.2d at 6 n.4. But the fact remains that this is the current system under which medical malpractice suits operate, and even as applied to Sendelweck, there was no deprivation of notice or an opportunity to be heard, and therefore no due process violation. Sendelweck filed a proposed complaint with the IDOI believing the named providers were qualified and, upon notification that they were not, she did not take advantage of the opportunity presented to her to present any additional evidence of qualified status to the IDOI. Though the current MMA procedure undoubtedly risks "encourag[ing] obstreperous legal gamesmanship on the part of defendants to medical malpractice claims," *Rumell*, 88 N.E.3d at 1121 (Baker, J., concurring), that is simply not what happened here, and no unreasonable burden was in place to prevent Sendelweck from pursuing her claim aside from her own failure to timely act.

[27] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.